ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Doubleshot, Inc. | ) | ASBCA No. 61691 |
| | ) | |
| Under Contract No. N6835-06-C-0416 *et al.* | ) | |

APPEARANCE FOR THE APPELLANT:      Mr. Alan Shulman
                                                                   CEO

APPEARANCES FOR THE GOVERNMENT:   Arthur M. Taylor, Esq.
                                                                   DCMA Chief Trial Attorney
                                                                   Srikanti Schaffner, Esq.
                                                                    Trial Attorney
                                                                    Defense Contract Management Agency
                                                                    Carson, CA

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON
APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Appellant, Doubleshot, Inc. (Doubleshot), has filed a motion for partial summary judgment contending that it is entitled to judgment as a matter of law on the government's claim to the extent that it is based on (1) missing or unsigned time cards and (2) disallowed independent research and development and bid and proposal costs. The Board grants Doubleshot's motion with respect to time cards but denies it with respect to independent research and development and bid and proposal costs.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The following facts are undisputed or uncontroverted, except as noted below with respect to the date Doubleshot produced its general ledger. The government has not disputed any of Doubleshot's proposed material facts not in dispute (AMF). This is Doubleshot's second motion for summary judgment. *Doubleshot, Inc.*, ASBCA No. 61691, 20-1 BCA ¶ 37,677 (*Doubleshot I*) *recon. denied*, 20-1 BCA ¶ 37,741. We restate the facts only to the extent necessary in this opinion.

1.  As related in *Doubleshot I*, the parties entered into the following four contracts:

Naval Air Warfare Center Contract No. N68335-06-C-0416 (the 416 contract) dated September 14, 2006 (R4, tab 1);

U.S. Army Tank-automotive and Armaments Command (TACOM) Contract No. W56HZV-07-C-0295 (the 295 contract) dated March 22, 2007 (R4, tab 2);

Office of Naval Research Contract No. N00014-07-C-0386 (the 386 contract) dated June 13, 2007 (R4, tab 5); and

Office of Naval Research Contract No. N00014-08-C-0497 (the 497 contract) dated September 11, 2008 (R4, tab 11).

*Doubleshot I*, 20-1 BCA ¶ 37,677 at 182,902.

2.  The contracts were all at least in part cost-plus-fixed-fee and incorporated Federal Acquisition Regulation (FAR) clause 52.216-7, ALLOWABLE COST AND PAYMENT (DEC 2002) and FAR 52.215-2, AUDIT AND RECORDS – NEGOTIATION (JUN 1999) (AMF ¶ 2; R4, tab 1 at 18; tab 2 at 16; tab 5 at 12; tab 11 at 12-13[1]).  The 416 contract incorporated DFARS 252.215-7002 COST ESTIMATING SYSTEM REQUIREMENTS (OCT 1998)[2] (R4, tab 1 at 19).  (The 295 contract incorporated DFARS 252.242-7004, MATERIAL MANAGEMENT AND ACCOUNTING SYSTEM (NOV 2005) (R4, tab 2 at 17).

*Time Cards – Missing and Unsigned*

3.  The larger of the two issues in the government's claim relates to Doubleshot's time cards.  The following events are relevant to the contentions raised in Doubleshot's motion.

4.  On January 28, 2010, the Defense Contract Audit Agency (DCAA) visited Doubleshot's office and conducted an examination of Doubleshot's accounting system.  As described in *Doubleshot I*, DCAA found the accounting system to be "non-existent."  *Doubleshot I*, 20-1 BCA ¶ 37,677 at 182,903.  DCAA detailed the issues it had identified in what it called a "Flash Report" that it issued more than 15 months later, on April 29, 2011.  *Id.* (citing R4, tab 25 at 3).

---

[1] R4 citations are to the .pdf page of the electronic file.

[2] Both the 386 and 497 contracts incorporate this clause, but then state that the clause is only applicable if the contract was awarded based on certified cost or pricing data, which is not the case for either contract (R4, tab 5 at 16, tab 11 at 17)

5.  By the time these events had occurred, the relevant Doubleshot fiscal years (FYs) had ended.  Doubleshot FY 2009 ended on February 28, 2009.  Doubleshot FY 2010 ended on February 28, 2010.  Doubleshot failed to submit final indirect cost rate proposals (ICRPs) within six months of each of those dates as required by the Allowable Cost and Payment clause, FAR 52.216-7(d)(2)(i).  *Id.* at 182,904; (AMF ¶ 5) Ultimately, Doubleshot submitted revised ICRPs for both FY 2009 and FY 2010 on September 25, 2013 (R4, tab 28 at 25, tab 29 at 31).

6.  More than two years later, on November 30, 2015, DCAA notified Doubleshot that it would conduct an audit of its FY 2009 and 2010 proposals (AMF ¶ 6).  According to the government, Doubleshot first produced its general ledgers on December 29, 2015 during that audit (gov't statement of genuine issues of material fact (GSMF) ¶ 8).  Doubleshot disputes this, contending that it produced the general ledgers on September 25, 2013, when it submitted the ICRPs (app. reply at 11).

7.  DCAA issued an audit report on June 12, 2017 that questioned various costs (R4, tab 30).  The contracting officer (CO) adopted DCAA's calculation and issued a final decision on June 8, 2018, for a government claim of $804,979, which included $633,397 arising from employee time cards (R4, tab 35; AMF ¶ 7).

8.  As explained in greater detail in the DCAA audit report, the $633,397 included a total of $479,852[3] in direct and indirect costs in FY 2009 and 2010 "due to lack of time cards," that is, time cards that Doubleshot could not produce, although it was able to demonstrate that it had paid the relevant employees.  For both issues related to time cards, the audit and final decision relied upon FAR 31.201-2(d), which provides:

> A contractor is responsible for accounting for costs appropriately and for maintaining records, including supporting documentation, adequate to demonstrate that costs claimed have been incurred, are allocable to the contract, and comply with applicable cost principles in this subpart and agency supplements.  The contracting officer may disallow all or part of a claimed cost that is inadequately supported.

(AMF ¶ 7; R4, tab 30 at 15-16; R4, tab 35 at 3-4).

---

[3] R4, tab 30 at 15-16
($162,432 + $79,213 + $158,411 + $79,796 = $479,852)

9. The claim also included $153,545[4] in direct and indirect costs in FY 2009 and 2010 relating to what the audit described as "unsupported labor transactions due to unsigned time cards by employees/managers and time cards/labor distribution schedules which did not reconcile to posted general ledger hours." (R4, tab 30 at 16) But the audit once again acknowledged that Doubleshot had provided documents demonstrating that it had paid the employees. (R4, tab 30 at 15-16, tab 35 at 3-4)

*Independent Research & Development/Bid & Proposal (IR&D/B&P)*

10. The final decision states that the CO had disallowed "inadequately supported IR&D/B&P costs, including allocable fringe and overhead costs in that Doubleshot, Inc. did not segregate/accumulate IR&D costs by project/job no.. There was no authorization of the IR&D activity, and no delineation of the IR&D/B&P proposed statement of work by project/job number." (R4, tab 35 at 4). The parties agree that the amount in dispute is $202,321 (AMF ¶ 8).

11. The Board concludes that this issue has not been developed adequately in Doubleshot's motion, which contains a single sentence in its proposed undisputed facts about this issue, and just over one page of argument. It appears to the Board that there are material facts in dispute.

12. For example, Doubleshot contends in the argument section of its brief that "there is no cost impact of B&P or IR&D classifications" and that the costs of individual IR&D or B&P efforts were not material and, as a result, its accounting method was appropriate (app. mot. at 5). The government disputes the assertion that the costs were not material. In addition to calculating a cost impact of $202,321, the government contends that Doubleshot failed to produce sufficient documentation during the audit to reach such a conclusion (gov't resp. at 18).

13. Doubleshot filed a timely appeal on July 12, 2018.

DECISION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, the Board's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249. Conclusory statements and mere denials are not sufficient to ward off summary judgment. *Mingus Constructors, Inc. v. United State*s, 812 F.2d 1387,

---

[4] R4, tab 30 at 15-16
($51,393 + $29,335 + $45,349 + $27,468 = $153,545)

4

1390-91 (Fed. Cir. 1987).

The government bears the burden of proof in demonstrating that costs are unallowable. *Luna Innovations, Inc.*, ASBCA No. 60086, 18-1 BCA ¶ $36,919 at $179,869.

*Missing Time Cards*

More than half of the government's claim ($479,852) relates to the missing time cards (SOF ¶ 8) and raises the question of how long Doubleshot was required to maintain those records. *See JANA, Inc. v. United States*, 936 F.2d 1265, 1268 (Fed. Cir. 1991) ("The real issue in this case then is *how long* JANA was required to maintain the records that supported labor charges it invoiced.") (Emphasis in original). We start with a review of the applicable contract and FAR provisions.

The Allowable Cost and Payment clause provides: "Audit. At any time or times before final payment, the Contracting Officer may have the Contractor's invoices or vouchers and statements of cost audited." FAR 52.216-7(g).

The Audit and Records clause gives the government "the right to examine and audit all records and other evidence sufficient to reflect properly all costs claimed to have been incurred or anticipated to be incurred directly or indirectly in performance of this contract." FAR 52.215-2(b).

With respect to "Availability" of the records, this clause further provides:

> The Contractor shall make available at its office at all reasonable times the records. . . for examination, audit, or reproduction, until 3 years after final payment under this contract *or for any shorter period specified in Subpart 4.7*, Contractor Records Retention, of the Federal Acquisition Regulation (FAR), or for any longer period required by statute or by other clauses of this contract.

FAR 52.215-2(f) (emphasis added).

FAR 4.703[5] requires the contractor to make its records available for

(1) 3 years after final payment or, for certain records,

---

[5] Neither party has contended that the dispute turns on which year of the FAR we consider. We cite to the version that was in effect when the parties entered into the first of the contracts (the 416) in September 2006.

> (2) the period specified in 4.705 through 4.705–3, *whichever of these periods expires first.*

FAR 4.703(a) (emphasis added).

The retention periods for the documents listed in FAR 4.705 are calculated from the end of the contractor's fiscal year in which it recorded the charges. FAR 4.704(a). However, if the contractor did not submit its final indirect cost rate proposals in a timely manner, then "the retention periods in 4.705 shall be automatically extended one day for each day the proposal is not submitted after the original due date." FAR 4.703(b)(3).

FAR 4.705 sets forth various retention periods based on the type of documents. As relevant here, it provides "Clock cards or other time and attendance cards: Retain 2 years." FAR 4.705-2(b). Thus, if a contractor submitted its final ICRP on time (six months after the end of the FY), it would have to retain the time cards for 18 months after that date.

Based on these various requirements, we reach the following conclusions.

A. Doubleshot's FY 2009 ended on February 28, 2009. Thus, its ICRP was due on August 28, 2009. Its actual ICRP submission date was September 25, 2013, which is four years and 28 days late. (SOF ¶ 5)

B. If Doubleshot had submitted its ICRP on time, its record retention date for the FY 2009 time cards would have been February 28, 2011. FAR 4.704(a), FAR 4.705-2(b). But the record retention date is extended for the four years and 28 days that the ICRP was late. FAR 4.703(b)(3). Thus, the adjusted retention date for the FY 2009 time cards was March 28, 2015.

C. Doubleshot's FY 2010 ended on February 28, 2010. The ICRP due date was August 28, 2010. The actual submission date was September 25, 2013, which is three years and 28 days late. (SOF ¶ 5)

D. If Doubleshot had submitted its ICRP on time, its record retention date for the FY 2010 time cards would have been February 28, 2012. But the record retention date is extended for the three years and 28 days that the ICRP was late. FAR 4.703(b)(3). Thus, the adjusted retention date for the FY 2010 time cards was March 28, 2015.

E. The audit did not start until after November 30, 2015 (SOF ¶ 6). Thus, Doubleshot's obligation to retain the FY 2009 and 2010 time cards expired more than eight months before the audit started. Because Doubleshot no

6

longer had any obligation to maintain these records, the government's claim fails to the extent it is based on the lack of such records. *See JANA*, 936 F.2d at 1269 (observing that "a shorter retention period is imposed on voluminous records, like individual employee time cards. . ." but reversing the U.S. Claims Court judgment in favor of JANA because the records at issue were not properly classified as time cards and were subject to a longer retention period).

The government raises various contentions relating to general fairness and/or based on a novel reading of the FAR. The former arguments are captured by the government's protestation that "A contractor should not be entitled to hide behind the FAR 4.7 or FAR 52.215-2 records retention criteria in an attempt to avoid supporting its claimed costs. . ." (gov't resp. at 13). But as demonstrated by the Federal Circuit's decision in *JANA*, 936 F.2d at 1269, the government's regulations specify the retention period. The CO incorporated the Audit and Records clause in the contract (SOF ¶ 2) and, as a result made the FAR Subpart 4.7 record retention periods part of the contract. The government's fairness argument is not well taken because the two-year record retention period is a product of the government's regulations and a clause incorporated by the CO.

The government's contentions based on the FAR start with the DCAA site visit in 2010, which identified deficiencies in Doubleshot's accounting systems. The government references the incorporated Cost Estimating System Requirements clause (DFARS 252.215-7002) and the Material Management and Accounting System clause (DFARS 252.242-7004) (SOF ¶ 2). It contends that these clauses required Doubleshot to correct the deficiencies upon notice. (Gov't resp. at 11-12). The government fails, however, to discuss the actual language of these clauses or to specify how they apply to these facts. For example, while it is true that DFARS 252.215-7002(e) requires a contractor to correct estimating system deficiencies after receiving a written report, this clause also states that the requirement only applies to large businesses (DFARS 252.215-7002(c), which raises the question: is Doubleshot a large business? The 295 contract, on page one, lists Doubleshot as "TYPE BUSINESS: Other Small Business Performing in U.S." (R4, tab 2 at 1). The government does not discuss or reconcile any of this.

From there, the government contends that "the record retentions period should be properly extended through the period until Doubleshot corrects those deficiencies . . ." (gov't resp. at 10). This appears to be merely a policy argument because the government cites no supporting precedent, contract clause, or FAR provision.

Similarly, the government contends that Doubleshot did not submit its general ledger until December 29, 2015, which, in the government's view, means it is not appropriate to base the FAR 4.703(b) records maintenance extension on the date

7

Doubleshot submitted its ICRPs. The government suggests that a "more appropriate" rule would be "'one day for each day the general ledger was not timely submitted. . .'" or until June 29, 2017 (gov't resp. at 16-17). But this would require the Board to rewrite the regulation, which states that the extension is one day for each day that the ICRPs are untimely. FAR 4.703(b)(3). The regulation says nothing about extensions for late availability of general ledgers. We are not empowered to rewrite regulations. Doubleshot is granted summary judgment to the extent that the government's claim is based on missing time cards.

*Unsigned Time Cards*

As stated above, the government seeks $153,545 "due to unsigned time cards by employees/managers and time cards/labor distribution schedules which did not reconcile to posted general ledger hours," and which DCAA had questioned pursuant to FAR 31.201-2(d) (SOF ¶¶ 8-9). As Doubleshot observes in its motion, FAR 31.201-2(d) does not require time cards to be signed (app. mot. at 4). The government does not challenge this in its brief or provide other support for a requirement that time cards be signed. We consider the issue to have been waived.

Accordingly, Doubleshot is granted summary judgment to the limited extent that the $153,545 is based solely on unsigned time cards. The Board observes, however, that the audit states that the "majority of the unsigned time cards also had reconciliation issues" with the general ledger and we do not grant summary judgment on reconciliation issues (R4, tab 30 at 16).

## CONCLUSION

The Board grants Doubleshot summary judgment on time card issues, as discussed above. The Board denies summary judgment on IR&D/B&P costs because there are disputed material facts.

Dated: July 19, 2022

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

8

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61691, Appeal of Doubleshot, Inc., rendered in conformance with the Board's Charter.

Dated: July 21, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

9